UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAVID S. WILLIAMS and CHRISTINE L. WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC.; QUALITY LOAN SERVICE CORP. OF WASHINGTON,<br><br>Defendants. | CASE NO. C10-5880BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS WELLS FARGO BANK, N.A. AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC.'S MOTION FOR DISMISSAL WITH PREJUDICE OF ALL CLAIMS |

This matter comes before the Court on Defendants Wells Fargo Bank, N.A. and Mortgage Electronic Registration Systems Inc.'s Motion for Dismissal with Prejudice of All Claims (Dkt. 52). The Court has considered the pleadings filed in support of, and in opposition to, the motion and the remainder of the file. For the reasons set forth herein, the Court grants in part and denies in part the motion.

# I. PROCEDURAL HISTORY

On December 2, 2010, Plaintiffs David S. Williams and Christine L. Williams ("Plaintiffs") filed a complaint against Wells Fargo Bank, N.A. ("Wells Fargo"). Dkt. 1. On January 25, 2011, Wells Fargo answered the complaint and asserted a compulsory counterclaim. Dkt. 10.

On June 29, 2011, Plaintiffs moved for voluntary dismissal (Dkt. 24), but several weeks later opted instead to move to amend their complaint and add as defendants Mortgage Electronic Registration Systems, Inc. ("MERS"), and Quality Loan Service Corp. of Washington ("Quality Loan Service"). Dkt. 31. Plaintiffs filed the amended verified complaint on August 29, 2011. Dkt. 40.

On September 27, 2011, Plaintiffs moved to "bar non-judicial foreclosure" pursuant to the Fair Debt Collections Practices Act. Dkt. 47. On October 17, 2011, Wells Fargo and MERS responded. Dkt. 50. On October 20, 2011, Plaintiffs replied. Dkt. 56.

On October 18, 2011, Wells Fargo and MERS (collectively, the "Defendants") filed a motion for dismissal with prejudice of all claims. Dkt. 52. On October 19, 2011, Quality Loan Service filed a separate motion to dismiss all claims with prejudice. Dkt. 54. On November 4, 2011, Plaintiffs responded to both motions to dismiss. Dkt. 58. On November 11, 2011, Wells Fargo and MERS replied. Dkt. 61. Quality Loan Service did not file a separate reply.[1]

---

[1] On its motion to dismiss, Quality Loan Service incorporated the facts and legal arguments contained in this motion. Contemporaneous with this Order, the Court has issued a separate order dismissing with prejudice the claims against Quality Loan Service.

# II. FACTUAL BACKGROUND

This matter arises out of Plaintiffs' efforts to enjoin the foreclosure of their home, located at the common street address of 15208 Daffodil Street Court East, Sumner, WA 98390 ("Property"), which Plaintiffs acquired in September 2004 via a statutory warranty deed. Dkt. 40 at 1-2, 13-16. In their amended complaint, Plaintiffs have asserted several claims, including under the Fair Debt Collections Act, Fair Credit Reporting Act, Truth in Lending Act, Real Estate Settlement Procedures Act, and the Washington Consumer Protection Act. Dkt. 31 at 9.

### A. Plaintiffs' Refinancing of Their Home Loan

The facts critical to the resolution of this motion date back to May 30, 2007, when Plaintiffs borrowed $300,000 from MortgageIT, Inc. for the purposes of refinancing the loan on the Property. Dkt. 52 at 2. In so doing, Plaintiffs made and delivered to MortgageIT, Inc. a promissory note and a deed of trust, which they recorded on June 5, 2007 in the official records of Pierce County. *Id*.; Dkt. 40 at 18-35. The deed of trust listed MERS, acting as the lender's nominee, as the beneficiary. *Id*. at 18.

On July 20, 2010, MERS assigned the deed of trust to Wells Fargo, recording in the process an Assignment of Deed of Trust with the Pierce County Auditor. Dkt. 53 at 47-48. On July 29, 2010, Wells Fargo, as the new beneficiary of the deed of trust, appointed Quality Loan Service as the Successor Trustee. *Id*. at 49-50.

### B. Plaintiffs' Recordation of Documents and Payment Stoppage

On March 26, 2009, Plaintiffs recorded in Pierce County a document titled "Affidavit of Truth and Fact Complaint of Fraud in the Factum." *Id*. at 51-55. The

document alleged that MortgageIT committed fraud "in the issuance of the mortgage note and/or security agreement and/or Deed of Trust because [it] had full knowledge that the loan had been paid in full after [Plaintiff(s)] provided a signed promissory note." *Id*. at 53. The document further alleged that MortgageIT "received face value of $300,000 in credit / new money that is rightly owed to [Plaintiff(s)]." *Id*. Finally, the document alleged that Wells Fargo had "no monetary interest, risk or lawful claim against the private property of [the Plaintiffs] . . . ." *Id*.

Shortly after recording this document, in May 2009, Plaintiffs stopped making payments on their loan. *Id*. at 56. On August 25, 2010, Quality Loan Service, as the Successor Trustee, recorded a Notice of Trustee's Sale for December 3, 2010. *Id*. On September 7, 2010, Plaintiffs recorded a mechanic's lien against the Property in the amount of $2,734,733.70. Dkt. 53 at 63-64. Quality Loan Service postponed the trustee's sale and eventually recorded another Notice of Trustee's Sale for September 30, 2011, which, too, it postponed. Dkt. 53 at 59-62. According to the latest Notice of Trustee's Sale, Plaintiffs are $65,782.50 in arrears. *Id*.

### III. DISCUSSION

Defendants move to dismiss with prejudice all of Plaintiffs' claims pursuant to Civil Rule 12(b)(6) or 56(b). Dkt. 52; Dkt. 54.[2]

---

[2] Defendants seek dismissal of *all* claims with prejudice, but, in their motion, address only *some* of the claims. Nevertheless, the Court addresses all the claims implicated in the amended complaint.

**A.     Standard**

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). A court accepts the factual allegations in the complaint as true for purposes of deciding the motion to dismiss. *Id*. To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell v. Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555-56 (internal citations omitted). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

Alternately, summary judgment under Rule 56(b) of the Federal Rules of Civil Procedure is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Quiet Title Claim**

Plaintiffs predicate much of their complaint on the theory that Defendants, individually or collectively, do not have an interest in the Property and otherwise lack authority under the deed of trust to proceed with the foreclosure. *See* Dkt. 40 at 6-7

(disputing the authenticity of the note and claiming that the note was improperly endorsed). In support of that theory, Plaintiffs assert various vague and inconsistent allegations, which the Court has done its best to piece together.[3] Taking these allegations in an expansive light, Plaintiffs allege not so much that the foreclosure proceedings are procedurally defective under the Deed of Trust Act, RCW 61.24 et seq., but that the role played by MERS in the deed of trust,[4] which lists MERS as the "nominee", was improper, and that MERS' assignment of all beneficial interest under the deed of trust to Wells Fargo under the Assignment of the Deed of Trust was invalid. Dkt. 40 at 7-10. The Court finds that there is no merit to these arguments.[5]

RCW 61.24.005(2) defines a beneficiary as "the holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the same as security for a different obligation." In May 2007, in refinancing their home, Plaintiffs executed a deed of trust that clearly named MERS as a beneficiary. Dkt.

---

[3] Typically, in such a circumstance, the Court would require a more definite statement of the claim or grant a plaintiff an opportunity to amend, especially where a plaintiff is operating pro se as here. However, in construing the allegations in the light most favorable to Plaintiffs, the Court finds that granting Plaintiffs an opportunity to amend would be futile in this case.

[4] MERS is a private electronic database, operated by MERSCORP, Inc., that tracks the transfer of the "beneficial interest" in home loans, as well as any changes in loan servicers. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1039 (9th Cir. 2011).

[5] In their response brief, Plaintiffs curiously argue that they have "uncovered an unforeseen defect in [their] own claim" in that their "Acknowledgement of the Statutory Warranty Deed was never recorded." Dkt. 58 at 2. Based on this discovery, Plaintiffs argue that they "lacked capacity to encumber the subject property at the time the deed of trust was executed and recorded," and that the "were enticed" into making payments toward their home. *Id*.

Although amending a complaint within a response to a motion such as this is improper and ordinarily does not properly place the new issue before the Court, the Court gives some latitude to Plaintiffs because they are pro se. Even so, the Court finds Plaintiffs' arguments on response contrary to law and void of reason.

53 at 31, 42 ("MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument."). Plaintiffs consented to this arrangement, and Plaintiffs have not alleged any facts suggesting that this consent was obtained through unlawful means.[6] Accordingly, Plaintiffs cannot establish that they were misinformed about the MERS system, relied on any misinformation in entering into their home loan, or were injured as a result of the misinformation. *See Cervantes*, 656 F.3d at 1042.

Then, in July 2010, MERS, acting as the beneficiary and nominee of the deed of trust, assigned the deed of trust to Wells Fargo, and that assignment was recorded with the Pierce County Auditor. *Id*. at 47. Again, Plaintiffs have not alleged any facts suggesting that the assignment was unlawful. The assignment document establishes a chain of title from MERS to Wells Fargo, and the Court is not aware of any assignment by MERS to an entity other than Wells Fargo. Accordingly, the Court finds that Wells Fargo is, in fact, the beneficiary of the deed of trust and the proper party, through its Successor Trustee, to bring the foreclosure proceedings. Given that Plaintiffs do not dispute that they have failed to keep current on their mortgage payment, the Court finds that Plaintiffs cannot maintain their claim to quiet title and/or declaratory relief.

---

[6] Plaintiffs claim that "there is no clear statute or decision that Washington law permits MERS to serve as beneficiary." Dkt. 40 at 8. Such a claim regarding the role of MERS is similar to other claims that courts in this district have routinely rejected. *See Ceburn v. HSBC Bank USA, N.A.*, 2011 WL 321992, at *3 (W.D. Wash. Feb. 2, 2011); *Vawter v. Quality Loan Service Corp.*, 707 F. Supp. 2d 1115, 1125-26 (W.D. Wash. 2010); *Daddabbo v. Countrywide Home Loans, Inc.*, 2010 WL 2102485, at *5 (W.D. Wash. 2008). The cases that Plaintiffs cite do not compel a different result.

## C. Slander of Title

Plaintiffs also assert a claim for slander of title in connection with the notice of trustee's sale. To establish a slander of title action, the plaintiff must establish words that (1) are false; (2) are maliciously published; (3) are spoken with reference to some pending sale or purchase of the property; (4) result in a pecuniary loss or injury to the plaintiff; and (5) defeat plaintiff's claim to title. *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 375 (1980).

Here, the slander of title claim fails for the same reasons that the quiet title action fails. Plaintiffs have failed to show that there was any impropriety in the events leading up to the foreclosure, including the foreclosure process itself. Moreover, even if Plaintiffs could allege some falsity with respect to the notice of trustee's sale, the Court finds that Plaintiffs cannot meet the element of malicious publication. *Id.* ("[m]alice is not present where the allegedly slanderous statements were made in good faith and were prompted by a reasonable belief in their veracity"). Accordingly, the Court dismisses Plaintiffs' slander of title claim.

## D. Declaratory Relief and/or Injunctive Relief

To establish a claim for declaratory relief, there must be "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Marin v. Lowe*, 8 F.3d 28 (9th Cir. 1993). Unless an actual controversy exists, the district court is without power to grant declaratory relief. *See Dairies v. Alcatel, S.A.*, 105 F. Supp. 2d 1153, 1155 (E.D. Wash. 2000) (quoting *Garcia v. Brownell*, 236 F.2d 356, 357-58 (9th Cir. 1956)). As explained,

Plaintiffs have offered no allegations demonstrating the existence of a "substantial controversy," and, therefore, they have not stated a claim for declaratory relief. Likewise, the Court finds that Plaintiffs have failed to plead facts sufficient for injunctive relief. *See* RCW 61.24.130 (setting out requirements for seeking injunctive relief in the case of a trustee's sale). Accordingly, the Court dismisses both claims.

**E.    Fair Debt Collection Practices Act ("FDCPA")**

Plaintiffs alleges that Defendants are in violation of the FDCPA, 15 U.S.C. § 1692, et seq.,[7] for failing to verify the alleged debt. Dkt. 40 at 5. Although Plaintiffs do not dispute that they are in fact in default on the mortgage, it appears that they dispute the *amount* of the debt insofar as they have not received any verification of that amount. *Id*. In their motion, Defendants do not claim that they provided verification. Instead, they assert two bases for dismissal, each one of which is discussed in turn.

1.    <u>Debt Collector</u>

Defendants (namely Wells Fargo) seek dismissal of the FDCPA claim on the basis that they are not "debt collectors" within the meaning of the statute. Dkt. 52 at 7. Wells Fargo contends that the statute only applies to "parties collecting the debt of another," 12 U.S.C. § 1692(a)(6), and that "creditors, mortgagors and mortgage servicing companies

---

[7] Congress enacted the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq.
>   to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 U.S.C. § 1692(e).

are not 'debt collectors' and are exempt from liability under the [FDCPA]." *Id*. (citing *Caballero v. Ocwen Loan Serv.*, 2009 WL 1528128, at *1 (N.D. Cal. 2009) and *Glover v. Fremont Inv. and Loan*, 2009 WL 6114001, at *8 (N.D. Cal. 2009)). Because it is collecting its own debts, Wells Fargo argues that it is exempt from FDCPA liability. *Id*. Alternately, Wells Fargo claims that the FDCPA is not implicated in a non-judicial foreclosure proceeding. Dkt. 52 at 7. Neither argument justifies dismissal at this time.

First, the term "debt collector" does not include

> any person collecting or attempting to collect any debt owed or due or asserted owed or due another to the extent such activity . . . (iii) concerns a debt *which was not in default at the time it was obtained by such person*.

15 U.S.C. § 1692a(6)(F) (emphasis added). "In other words, the [FDCPA] treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not." *See Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) (citing cases). Here, Wells Fargo admits that Plaintiffs had been in default for more than a year at the time that MERS assigned the deed of trust to Wells Fargo in June 2010. Dkt. 52 at 2-3; Dkt. 53 at 56-57. As a result, the Court finds that Wells Fargo meets the definition of "debt collector" under the FDCPA and, therefore, may be implicated under the statute.

Second, although the Court is aware of district court cases that have held that the act of foreclosing on property is not "debt collection" under the FDCPA, this Court has not adopted such a per se holding and it will not do so here. *See Albers v. Nationstar Mort. LLC*, 2011 WL 43584, at *2 (E.D. Wash. Jan. 3, 2011) (citing cases). Nothing in the statute compels the Court to create an exception to the definition of "debt collector,"

as Wells Fargo proposes, where a party is non-judicially enforcing on a security instrument rather than pursuing debt collection through more traditional means. To the contrary, courts have reasoned that as long as a defendant meets the statutory definition of debt collector, "they can be covered by all sections of the Act . . . regardless of whether they also enforce security interests." *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 378 (4th Cir. 2006) (referring to § 1692f(6) as an inclusive provision); *see also Kaltenbach v. Richards*, 464 F.3d 524, 528-29 (5th Cir. 2005) (noting that "the entire FDCPA can apply to a party whose principal business is enforcing security interests but who nevertheless fits § 1692a(6)'s general definition of debt collector").

2. <u>Statute of Limitations</u>

Wells Fargo also contends that the FDCPA claim is barred by the one-year statute of limitations. 12 U.S.C. § 1692k(d).[8] In support, Wells Fargo argues that Plaintiffs first raised the allegations pertaining to the FDCPA claim in the "Affidavit of Truth and Fact Complaint of Fraud in the Factum ("Affidavit")," dated March 26, 2009. Because Plaintiffs had "knowledge" of the acts giving rise to the FDCPA claim at that time, Wells Fargo claims that Plaintiffs should have brought their claim "no later than April of 2010."

The Court finds Wells Fargo's argument compelling, but ultimately unconvincing under both Rule 12(b)(6) and Rule 56(b) standards. For one, the Court is unclear on the circumstances giving rise to the Affidavit and its aftermath. Filed on March 26, 2009, the Affidavit states that "Wells Fargo . . . has no monetary interest, risk or lawful claim

---

[8] "An action to enforce any liability [under the FDCPA] may be brought . . . within one year from the date on which the violation occurs." 12 U.S.C. § 1692k(d).

against the . . . property of [Plaintiffs]" and then asks Wells Fargo to provide verification that it had "not committed fraud in the factum." Dkt. 53 at 53. As a result, the Affidavit implies that, as of its filing date, there existed a nexus between Wells Fargo and the underlying debt, but, curiously, Wells Fargo did not become the beneficiary of the deed of trust until nearly 16 months later on July 20, 2010. Dkt. 53 at 47-48.

More importantly, the Court hesitates to read the portion of the Affidavit concerning Wells Fargo so broadly as to impute knowledge of circumstances that would give rise to a FDCPA claim. Indeed, it appears that the Affidavit serves, if anything, as a request for proof of the underlying debt, and Plaintiffs contend in their amended complaint that Defendants did not provide that proof. Dkt. 40 at 5. Based on the existing record, the Court cannot accept Wells Fargo's invitation to conclusively accept March 26, 2009 as the date from which to calculate the one-year limitations period.

Accordingly, the Court denies dismissal of the FDCPA claim with respect to Wells Fargo, although notes that this denial is limited to the two asserted grounds discussed above. However, the Court dismisses with prejudice any FDCPA claim with respect to MERS. MERS had ceased to be the beneficiary of the deed of trust as of July 20, 2010, and Plaintiffs have not implicated MERS in their FDCPA allegations.

**F.     Fair Credit Reporting Act ("FCRA")**

Plaintiffs next claim that Defendants violated the FCRA, 15 U.S.C. § 1692, et seq., by "permitting or requesting [sic] erroneously reporting the alleged debt / obligations on the Plaintiffs' credit report." Dkt. 40 at 6. Plaintiffs contend that they disputed the debt

to credit reporting agencies; that they did not receive any response that the debt is valid; and that the debt remains on Plaintiffs' credit report. *Id.*

Section 1681s-2(b) of the FCRA provides for a private right of action against a furnisher of information, as defined by the statute, based on a response (or lack thereof) to a notice of dispute received directly from the consumer or borrower. *See Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002). Specifically, section 1681s-2(b) states that furnishers of information have the following duties upon notice of dispute:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
> (i) modify that item of information;
> (ii) delete that item of information; or
> (iii) permanently block the reporting of that item of information.

*Id.*

Here, Defendants argue that section 1681s-2 does not require a furnisher of information to stop reporting a loan as delinquent just because the borrower claims that

the debt is invalid. Dkt. 52 at 8. The Court agrees. Plaintiffs do not dispute that they are in default. It appears that the Plaintiffs stopped making payments on their mortgage in or around May 2009, and although they claim that they have not received any validation of the debt, the Court cannot find that there is any question that a debt in fact exists.

Moreover, even assuming that Plaintiffs "properly disputed" the debt to credit reporting companies as they so claim (Dkt. 40 at 6), section 1681s-2(b) requires Wells Fargo, as the apparent furnisher of information, to conduct an investigation and verify the debt with those credit reporting agencies. 15 U.S.C. § 1681s-2(b). In other words, Plaintiffs' claim that Wells Fargo has yet to provide *them* directly with a "validation of the debt" does not, even if true, give rise to a FRCA claim where the Plaintiffs submitted their notice of dispute to credit reporting agencies.

Accordingly, the Court dismisses Plaintiffs' FRCA claim with respect to both Wells Fargo and MERS.

**G.     Real Estate Settlement Procedures Act ("RESPA")**

Plaintiffs also allege that they submitted to Defendants a Qualified Written Request under RESPA, to which Defendants did not respond. RESPA provides in pertinent part:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . unless the action requested is taken within such period.

12 U.S.C. § 2605(e)(1)(A). A "Qualified Written Request" ("QWR") is defined as a written document including the name and account of the borrower and "includes

a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)

Here, the Court finds that the factual basis for the RESPA claim is a conclusory statement that does not meet the pleading threshold under applicable standards. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The amended complaint does not attach the QWR or otherwise allege its date, its contents or subject matter, or any other pertinent information, including which, if any, of the Defendants is the "loan servicer" subject to the claim. *See* 12 U.S.C. 2605(e). The amended complaint also fails to plead facts demonstrating the actual damages that Plaintiffs incurred as a result of Defendants' alleged failure to respond. 12 U.S.C. § 2605(f)(1) (requiring "actual damages" as a result of defendants' conduct); *see also Singh v. Washington Mut. Bank*, 2009 WL 2588885, at *5 (N.D. Cal. Aug. 19, 2009) (dismissing RESPA claim because "plaintiffs have failed to allege any facts in support of their conclusory allegation that as a result of defendants' failure to respond, defendants are liable for actual damages, costs, and attorneys fees.").

Indeed, Defendants deny that they received a valid QWR, and Plaintiffs have not rebutted that contention or otherwise alleged any fact regarding the inadequacy of any response. Complicating matters further, the RESPA-related allegations, when read in the context of the entire complaint, appear to relate not to the servicing of the loan, but rather more generally to allegations of underlying mischief in the transaction, including in connection with the deed of trust. *See* 12 U.S.C. § 2605(e)(3) (noting that, under RESPA, any communication must "relate[] to the servicing of such loan"); *see also*

*Derusseau v. Bank of Am., N.A.*, 2011 WL 5975821, at *4 (S.D. Cal. Nov. 29, 2011) (noting that broad requests for information and documentation related generally to Plaintiffs' loan are not covered by Section 2605). Accordingly, the Court dismisses Plaintiffs' RESPA claim.

**H.     Truth in Lending Act ("TILA")**

Plaintiffs claim that they are entitled to damages under TILA, 15 U.S.C. § 1601 et seq., but, in so doing, plead no facts in support of the claim. For this reason alone, the Court dismisses Plaintiffs' TILA claim.

But even if Plaintiffs had pled sufficient facts, the Court must still dismiss the TILA claim against Defendants insofar as neither loaned money to Plaintiffs. *See* 15 U.S.C. § 1601 et seq. (TILA is applicable only to lenders.) Moreover, the Court finds that the TILA claim is long time-barred because of the applicable one-year statute of limitations, which began on the date that Plaintiffs consummated the loan. *See Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001 (9th Cir. 2008).

**I.     Washington Consumer Protection Act ("CPA")**

To prevail on a CPA claim, a plaintiff must show: (1) an unfair or deceptive act or practice; (2) that occurs in trade or commerce; (3) a public interest; (5) injury in their business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780 (1986). Failure to satisfy even one of the elements is fatal to a CPA claim. *Id.* at 794-95.

Plaintiffs have asserted no facts in support of their CPA claim and, for this reason alone, the Court grants dismissal. To the extent that the CPA claim flows from Plaintiffs' theory that MERS played an improper role as the nominee or that its assignment to Wells Fargo was invalid, the Court repeats its finding that these allegations have no merit.

**J.    Cancellation of Lis Pendens**

On or about September 7, 2010, shortly after receiving a notice of trustee's sale, Plaintiffs recorded a mechanic's lien claim in the amount of $2,759,733.70. Dkt. 53 at 63. On September 23, 2010, Plaintiffs also recorded a lis pendens against the Property. Dkt. 45. The Court finds that there was no basis for filing these encumbrances, especially in light of the foregoing findings. Accordingly, pursuant to RCW 4.28.320, the Court cancels the mechanic's lien and the lis pendens and related encumbrances filed by Plaintiffs with respect to the Property.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Defendant Wells Fargo Bank, N.A. and Mortgage Electronic Registration Systems Inc.'s Motion of Dismissal of All Claims With Prejudice is **GRANTED**, except that dismissal of Plaintiffs' claim under the Federal Debt Collections Practices Act is **DENIED** with respect to Wells Fargo Bank, N.A.

Dated this 10th day of January, 2012.

BENJAMIN H. SETTLE
United States District Judge